IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DARLA STRAUTHERS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | Case No. 16-2530-CM |
| THE KELLOGG SALES COMPANY, ) | |
| d/b/a KELLOGG'S SNACKS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Darla Strauthers brings this diversity action against her former employer, defendant The Kellogg Sales Company, d/b/a Kellogg's Snacks. Initially, plaintiff brought five claims: (1) Count I: Workers Compensation Retaliation; (2) Count II: Age Discrimination under the Kansas Age Discrimination in Employment Act (KADEA); (3) Count III: Disability Discrimination under the Kansas Act Against Discrimination (KAAD); (4) Count IV: Retaliation; and (5) Count V: Breach of Contract. After defendant moved for summary judgment on all counts (Doc. 48), plaintiff voluntarily abandoned Counts I and V. Plaintiff also implicitly seems to agree that all claims other than those for her termination are barred. Defendant argued that plaintiff did not properly exhaust any claims for earlier actions, and plaintiff's reply brief only addressed her termination. For the following reasons, the court grants defendant's motion as to the remainder of plaintiff's claims.

**I.  Legal Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom

-1-

in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**II.  Factual Background**

Plaintiff does not controvert any of defendant's proposed statement of material facts. The court adopts all of the facts set forth by defendant, and recounts those relevant to the court's decision below.

### A.  Defendant's Policies and Practices

Defendant owns and operates the food manufacturing facility known as the "Kansas City bakery." The Kansas City bakery has the following departments: Mix/Bake, Shipping, Shop, Sanitation, Warehouse, and Packaging. The Bakery & Confectionery Workers, Local 184-L ("the Union") represents hourly production workers at the Kansas City bakery. The collective bargaining agreement ("CBA") between defendant and the Union governs the terms and conditions of hourly employment at the Kansas City bakery, including employee seniority.

To work in a particular department, employees must have the required qualifications and successfully bid into a job in that department. Employee seniority is determined by department. Within a department, higher-seniority employees can displace lower-seniority employees from their positions. But an employee may not be displaced by an employee with no department seniority—even if that employee requests the job as a disability accommodation.

Under the CBA, defendant may implement and enforce rules governing employee conduct, including attendance. Defendant uses an Absence Control Program. Under this program, employees who are not on attendance probation are given 80 units. Defendant subtracts units for unexcused absences, tardiness, and early leaves—but not for medical leave. Defendant adds back in units for

good attendance. The Program provides that defendant may terminate the employment of an employee whose attendance units are reduced to zero.

Defendant also has a Family Medical Leave Act ("FMLA") policy, which is administered by CIGNA. Eligible employees are entitled to up to twelve weeks of unpaid, job-protected leave. An employee may use FMLA leave if she is eligible, has a doctor's certification, and has available FMLA days. Defendant does not subtract attendance units for FMLA-covered absences.

### B. Plaintiff's Background Information

Plaintiff was born in 1962. At all relevant times, plaintiff was a Union member and a bargaining unit employee. Plaintiff understood the CBA's grievance process and has previously utilized it.

Plaintiff suffered a work-related injury in 2009. Beginning in July 2010, plaintiff sought workers' compensation benefits and treatment. By June 2012, plaintiff had reached maximum medical improvement and received a final award of workers' compensation benefits.

### C. Defendant's Accommodation of Plaintiff's Work Restrictions

On May 9, 2011, Dr. Peter Bieri evaluated plaintiff for the permanent impairment caused by her 2009 injury. Dr. Bieri issued permanent work restrictions: occasional lifting of 40 pounds, frequent lifting of 20 pounds, constant lifting of 10 pounds, and limited bending and twisting. These restrictions remained in place for the duration of plaintiff's employment.

Between July 2011 and June 2013, members of Human Resources corresponded with plaintiff on numerous occasions about the jobs that plaintiff could perform with her restrictions. Plaintiff wanted to work in the Mix/Bake department (and started there), but she was displaced in August 2011 by a higher-seniority employee in the Mix/Bake department. Plaintiff was then advised that her work restrictions could be accommodated on the "207 project" job, which was in the Packaging department.

Over the next two years, plaintiff repeatedly indicated that she wanted to work in the Mix/Bake department instead.  Human Resources reiterated that the 207 project job was within plaintiff's restrictions, and that plaintiff was expected to perform that job.  Human Resources eventually identified a number of other jobs that plaintiff could perform, but that list did not include the job that plaintiff wanted.  As late as July 2013, plaintiff voiced her disagreement with the omission of a particular job in the Mix/Bake department from the list of jobs she could perform.  But ultimately, plaintiff continued to work in different positions in the Packaging department (where she had seniority) until her termination.

### D.  Plaintiff's Termination

Plaintiff is familiar with defendant's Absence Control Program and understands defendant's call-in requirements.  Employees who will be absent are expected to call the bakery at least thirty minutes before their shift begins.  If the time qualifies as FMLA leave, the employee also must call CIGNA within forty-eight hours of her absence (not twenty-four hours, as plaintiff believed), or the absence will not be excused as FMLA leave.

At times, plaintiff was denied FMLA leave protection because she called CIGNA too late.  On March 7, 2013, CIGNA notified plaintiff that her February 28 and March 1, 2013 absences were not approved as FMLA leave because she did not timely report those absences to CIGNA.  On October 22, 2013, plaintiff was placed on probation under the Attendance Control Program because her attendance units were at -163.  Plaintiff was advised to improve her attendance and warned that her employment would be terminated if she did not do so. On December 17, 2013, plaintiff was again counseled for absenteeism.  After she was placed on probation in October, plaintiff accumulated four additional unexcused absences, received several tardies, and was cited for falsifying her time card.  Defendant's Human Resources Manager, Zach Hagan, warned plaintiff that if she accrued any further absences or

tardies before she improved her attendance to zero attendance units, her employment would be terminated. If she exhausted all of her available FMLA time, or if she did not submit a doctor's certification to CIGNA in support of FMLA, plaintiff's absences were not protected and would be subject to the Absence Control Program.

Plaintiff could monitor her balance of available FMLA days by calling CIGNA or accessing the CIGNA website. She claims that she called "constantly" for that information, and that she was fully aware of how much FMLA leave time she had available. Plaintiff called in absent to the bakery on March 3, 11, 17, and 18, 2014, claiming she was taking these dates off as FMLA leave. But she did not report those absences to CIGNA. At the time of her March 2014 absences, plaintiff was aware that she had previously exhausted her FMLA entitlement. CIGNA sent plaintiff three letters in February 2014, informing her that she had exhausted all of her available FMLA time and that absences after February 10, 2014 would not be protected.

Plaintiff knew she could access defendant's record of her attendance and units at any time. Defendant's attendance records showed that plaintiff had the following record of attendance discipline, unexcused absences, and early out/late in violations of defendant's attendance policy (not including vacation days, workers' compensation leaves, short-term disability leaves or FMLA leaves) in the three years before her termination:

2011
January 17
February 2, 3, 6, 14, 23–27, 28
March 1, 2, 3, 7, 14, 31
April 4, 18 (verbal warning issued), 24–26 (3-day suspension served)
May 18 (written warning issued)
August 6, 16, 19
September 2, 15, 18, 25
October 4 (written warning issued)

2012
April 24–26 (3-day suspension for attendance; 12 hours pay returned to avoid grievance)

July 24 (verbal warning issued)
August 3, 14–16 (3-day suspension served)
September 11, 21, 22, 23

2013
January 22, 24, 25 (written warning issued), 29, 30
February 1 (2-day suspension and written warning issued), 19 (third attendance warning issued), 28 (probation notice issued)
March 1, 7–10 (3-day suspension), 14 (termination notice issued), 15, 21
April 18, 19
May 10
July 1, 3, 10, 16, 18, 21, 26
August 2
September 9, 10, 16, 23
October 1, 22 (probation notice/termination warning issued), 24
November 12
December 17 (warned of termination for future violations)

2014
March 3, 11, 17, 18, 29

Plaintiff's attendance units were at -167 as of April 9, 2014, which was plaintiff's final day of work. Mr. Hagan terminated plaintiff's employment on April 10, 2014 for violation of the Absence Control Program. Plaintiff claims that she drafted a grievance protesting her termination, but she did not personally deliver the grievance to defendant as required by the CBA. She believes her husband delivered the grievance to a bakery security guard, who then forwarded the grievance papers to the Union. But defendant did not receive any grievance protesting plaintiff's termination and the Union never brought any such grievance forward to defendant.

There is no other bakery employee besides plaintiff who reached -167 attendance units and whose employment was not terminated. The majority of employees discharged for violation of the Absence Control Program never filed a workers' compensation claim, are not disabled, and do not have work restrictions. Plaintiff believes that some employees with zero or negative attendance units were terminated but later were allowed to return to work. Approximately 25% of employees

terminated for attendance violations, and who properly grieved their terminations, have been permitted to return to work on a last chance agreement through negotiations between defendant and the Union.

### E. Plaintiff's Exhaustion and Lawsuit

Plaintiff filed a Complaint of Discrimination with the Kansas Human Rights Commission ("KHRC") on October 7, 2014. After the KHRC denied relief, plaintiff filed a lawsuit against defendant on April 12, 2016 in the District Court of Wyandotte County, Kansas. Defendant removed the case to this court on the basis of diversity jurisdiction.

Plaintiff never complained to defendant about age discrimination. Plaintiff testified that she is not claiming she that was prevented from working a job because of her age, and that she does not have any information to support the allegation that she was discriminated against because of her age.

Plaintiff admits that no one at work told her that her employment was terminated because of her age, workers' compensation claim, or disability.

## III. Discussion

### A. Disability Claims

#### 1. Administrative Exhaustion

The KAAD prohibits disability discrimination against an employee. Kan. Stat. Ann. § 44-1101. Plaintiff claims that because of her disability, defendant failed to accommodate her disability, placed her in a difficult job position, reprimanded her, and terminated her employment.

A KAAD plaintiff must timely exhaust administrative remedies. Kan. Stat. Ann. § 44-1005(i); *Weber v. Bd. of Cnty. Comm'rs of Chase Cnty.*, No. 14-1263-JAR, 2014 WL 5848971, at *1 (D. Kan. Nov. 12, 2014) (citation omitted). Specifically, an employee must file an administrative claim within six months from the date of the alleged discriminatory act. Kan. Stat. Ann. § 44-1005(i). Failure to timely exhaust administrative remedies will result in dismissal of the claim. *See Weber*, 2014 WL

5848971, at *1 (citing *Jones v. Runyon*, 91 F.3d 1398, 1399 n.1 (10th Cir. 1996)) ("Failure to exhaust administrative remedies is a jurisdictional bar to filing suit in federal court.").

Because plaintiff filed her Charge of Discrimination on October 8, 2014, only conduct occurring six months prior—on or after April 8, 2014—is properly exhausted. Each accommodation request constitutes a discrete act and must be individually, timely exhausted. *Becerra v. EarthLink, Inc*, 421 F. Supp. 2d 1335, 1343 (D. Kan. 2006); *see also Miller v. Dillon Cos., Inc.*, No. 15-4946-DDC, 2016 WL 2894696, at *7 (D. Kan. May 18, 2016) (noting that the Tenth Circuit has not addressed the issue, but finding the reasoning in *Becerra* persuasive). Plaintiff last made a request to transfer to a job in the Mix/Bake department in July 2013. Her October 8, 2014 charge is therefore untimely. Each time plaintiff claims defendant wrongly subtracted an attendance unit or sent her home for lack of work also constitutes a discrete act that must be timely exhausted. Plaintiff testified that the last time this occurred was in 2012. Her October 8, 2014 Charge is untimely as to these allegations. Plaintiff's termination is therefore the only allegation that may form the basis for her claims in this lawsuit.

As noted above, plaintiff did not address defendant's exhaustion arguments in her response brief. She appears to concede that her termination is the only action at issue, representing that the ultimate issue in the case is defendant's reasons for terminating her employment. Summary judgment is granted on all claims relating to actions other than plaintiff's termination, including any claim for a reasonable accommodation.

### 2. Plaintiff's Termination

The court now turns to plaintiff's unlawful termination claim under the KAAD. Under federal law, when a plaintiff provides no direct evidence of discrimination, she must establish a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973).  Kansas courts apply the *McDonnell Douglas* approach to KAAD claims of disability discrimination.  *Hutchings v. Kuebler*, 5 F. Supp. 2d 1186, 1197 (D. Kan. 1998); *see also Nyanjom v. Hawker Beechcraft Corp.*, 641 F. App'x 795, 799 (10th Cir. 2016).  KAAD claim standards are essentially the same as the standards required under the Americans with Disabilities Act (ADA).  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 n.3 (10th Cir. 1997).  To establish a prima facie discrimination claim under the ADA, plaintiff must show that: (1) she is disabled; (2) she is "able to perform the essential functions of the job, with or without reasonable accommodation"; and (3) defendant "took adverse employment action against [ ] plaintiff because of [her] disability."  *Mendia v. Hawker Beechcraft Corp.*, No. 06-1212-JTM, 2008 WL 216914, at *8 (D. Kan. Jan. 17, 2008) (citing *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)).  If plaintiff meets this initial burden, the employer must provide a "legitimate, nondiscriminatory reason for the adverse employment action."  *Luster v. Vilsack*, 667 F.3d 1089, 1092 (10th Cir. 2011) (applying *McDonnell Douglas* in a Title VII context).  If this burden is met, plaintiff must show that the employer's proffered reasons for the adverse employment action are pretextual.  *Id*.  A plaintiff may "establish pretext by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 864 (10th Cir. 2007) (citations omitted).  If a party fails to meet its burden at any stage of the *McDonnell Douglas* framework, judgment should be entered as a matter of law against that party.  *Monroe v. City of Lawrence, Kan.*, 124 F. Supp. 3d 1097, 1111 (D. Kan. 2015).  The case only withstands summary judgment and proceeds to trial if both parties meet their burdens.  *Id*. (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).

At the first stage of the burden-shifting analysis, plaintiff must "present some affirmative evidence that disability was a determining factor in [defendant's] decision." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). When, as here, there is no direct evidence of causation, an employee might show that her alleged disability motivated the decision to terminate by relying on temporal proximity, such as showing adverse employment action shortly after a disability is announced. *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 749 (10th Cir. 1999); *Smith v. Millennium Rail, Inc.*, 241 F. Supp. 3d 1183, 1203 (D. Kan. 2017).

Defendant did not terminate plaintiff's employment in 2009 when it became aware she had injured herself. Defendant also did not fire plaintiff in 2010 when she took leave and filed a claim for benefits. Plaintiff remained employed in May 2011, when she presented restrictions and took medical leave related to her injury. And she remained employed in 2012 when she received a workers' compensation award related to her injuries. It was five years after learning of plaintiff's condition that defendant terminated plaintiff's employment. Nothing in the record suggests that plaintiff suffered employment termination because she had a disability. There is no evidence of temporal proximity or any other facts suggesting an inference of discrimination.

Even if plaintiff could establish a prima facie case, defendant offered a legitimate, nondiscriminatory basis for the decision: plaintiff's attendance record. The burden then returns to plaintiff to show that this reason was a pretext for illegal disability discrimination. Plaintiff did not present any evidence to support this finding. To the contrary, the record indicates that plaintiff was given multiple warnings and opportunities to improve her attendance. She failed to do so. There is no evidence of any other employee with a similar attendance record who was not terminated. Defendant is entitled to summary judgment on plaintiff's KAAD discrimination claim.

### 3. Disability Retaliation

The same *McDonnell Douglas* approach applies to plaintiff's claim for disability retaliation. To establish a prima facie case of retaliation, plaintiff must show: "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citation omitted).

Plaintiff cannot establish the required causal connection between any protected activity and defendant's decision to terminate her employment. Plaintiff has no evidence to suggest that defendant decided to terminate her employment because she had requested an accommodation, filed for benefits, or informed anyone of an alleged disability. And while, as discussed above, protected activity followed closely by an adverse employment action might be some evidence of causation, there is no such evidence presented here. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Plaintiff remained employed for years following her initial request for accommodation. Defendant continuously engaged her in the interactive process and accommodated her disability. Plaintiff has provided no evidence supporting a prima facie inference of disability retaliation. Even if she had, defendant's legitimate, non-retaliatory reliance on plaintiff's repeated violation of the Absence Control Program meets defendant's burden. And, as noted above, plaintiff has offered no evidence of pretext. Summary judgment is granted on plaintiff's disability retaliation claim.

### D. Plaintiff's Age Claims

The *McDonnell-Douglas* burden shifting framework also applies to plaintiff's age-related claims brought pursuant to the KADEA. *Vonlintel v. Eagle Commc'ns, Inc.*, No. 14-4125-KHV, 2016 WL 7179465, at *7 n.14 (D. Kan. Dec. 9, 2016); *Elza v. Koch Indus., Inc.*, 16 F. Supp. 2d 1334, 1340

(D. Kan. 1998).  As with plaintiff's disability claims, plaintiff bears the initial burden to prove a prima facie case for each claim.  If plaintiff is able to do so, the burden again shifts to defendant to articulate a facially legitimate, nondiscriminatory reason for its actions.  Once defendant has articulated such a reason, the burden shifts back to plaintiff to prove that such reason is a pretext and that unlawful discrimination actually motivated defendant's decision to terminate her employment.  For the following reasons, plaintiff's age-related claims fail.

### 1. Age Discrimination.

To establish a prima facie case of age discrimination, plaintiff must establish she was doing satisfactory work for defendant.  *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). The uncontroverted evidence shows that plaintiff's job performance was not satisfactory.  *See Grubbs v. The Salvation Army*, No. 13-4017-DDC, 2014 WL 6977943, at *6 (D. Kan. Dec. 9, 2014) (holding that the plaintiff did not satisfactorily perform his job duties when "[t]he uncontroverted record shows that plaintiff received multiple written warnings about excessive absences . . . .").  Plaintiff was issued verbal warnings, written warnings and served disciplinary suspensions because of her attendance. Defendant placed plaintiff on attendance probation twice in 2013.  When her attendance record did not improve, plaintiff was warned again that her employment would be terminated for further unexcused absences.  Even after she received notice that she had no protected leave time after February 10, 2014, plaintiff missed more work.  There is no evidence from which a reasonable jury could rationally find that plaintiff's age—not her attendance—led to her termination.

### 2. Age Retaliation

Finally, to establish a prima facie case of retaliation based on her age, plaintiff must prove: (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) a

-12-

causal connection between the protected activity and the adverse employment action exists. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017).

Plaintiff cannot establish the first element for her age retaliation claim; she did not engage in a protected activity. Plaintiff never complained of age discrimination during her employment. Although plaintiff complained about where she was staffed, she never complained about age discrimination. *See Boese v. Ft. Hays St. Univ.*, 814 F. Supp. 2d 1138, 1146 (D. Kan. 2011) (granting summary judgment where the plaintiff complained about work conditions, but not about discrimination). This lack of any evidence on an essential element warrants summary judgment in favor of defendant. *See Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. 48) is granted.

The case is closed.

Dated this 30th day of January, 2018, at Kansas City, Kansas.

                                            **s/ Carlos Murguia**
                                            **CARLOS MURGUIA**
                                            **United States District Judge**